S. SCHWABACHER & Co., INC. *v.* UNITED STATES (No. 3795)[1]

---

[1] T. D. 47484.

United States Court of Customs and Patent Appeals, January 7, 1935

*Walden & Webster* (*Edward F. Jordan* of counsel) for appellant.
*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *William H. Futrell*, special attorney, of counsel), for the United States.
*A. S. Gilbert*, amicus curiae.

[Oral argument December 12, 1934, by Mr. Jordan, Mr. Lawrence, and Mr. Gilbert]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

It is stipulated between counsel for the Government and counsel for the appellant, the stipulation having been entered into at the trial below, as follows:

It is hereby stipulated and agreed between counsel that the merchandise * * * consists of a distillate of petroleum, described in the United States Pharmacopoeia as parrafin oil or Liquid Petrolatum, and that it meets all the requirements thereof; that it is a single unmixed and uncompounded product; that it is, and was both at the time of importation and at the time of the passage of the tariff act of 1930, used almost entirely as an internal lubricant of the human system not assimilating any of it; that under the tariff act of 1913 it was passed free of duty under paragraph 561; that under the tariff act of 1922 it was passed free of duty under par. 1633.

Probably the name most commonly given the merchandise by the general public is mineral oil. It is sold by dealers under various technical and trade names.

It was classified by the Collector of Customs under the provision for "medicinal preparations" in paragraph 5, Tariff Act of 1930, duty being assessed at 25 per centum ad valorem.

The said paragraph reads:

PAR. 5. All chemical elements, all chemical salts and compounds, all medicinal preparations, and all combinations and mixtures of any of the foregoing, all the foregoing obtained naturally or artificially and not specially provided for, 25 per centum ad valorem.

The importer protested, claiming the merchandise to be entitled to free entry under paragraph 1733 of the said tariff act, which reads:

PAR. 1733. Oils, mineral: Petroleum, crude, fuel, or refined, and all distillates obtained from petroleum, including kerosene, benzine, naphtha, gasoline, paraffin, and paraffin oil, not specially provided for.

The First Division of the United States Customs Court, Brown, J., dissenting, overruled the protests and sustained the action of the Collector of Customs. From that judgment appeal was taken to this court.

In addition to the stipulation from which we have quoted, *supra*, there was a second stipulation of counsel, filed in the trial court after the taking of testimony had been concluded by both parties, which recites:

That the imported merchandise represented by Exhibit 2 was passed free of duty under paragraph 1733, Tariff Act of 1930, up to about March 1932, the effective date of the change in the administrative practice as to its classification authorized by the Secretary of the Treasury in T. D. 45438; and that the classification of the said merchandise on the shipments covered by the protests herein at 25% ad valorem under paragraph 5, Tariff Act of 1930, was made in accordance with and because of the said decision of the Secretary of the Treasury (T. D. 45438).

It is not deemed necessary to quote T. D. 45438 in full. It is in the form of a letter, approved by the Secretary of the Treasury, addressed to the Collector of Customs at the port of New York by the Acting Commissioner of Customs. In substance, the ruling was made that merchandise described as "Russian Mineral Oil", which was understood to be "used for the purpose of alleviating bodily disorders" responded "not only to the dictionary definition of a medicinal preparation but to the common understanding as well", and, although the article was held to be "aptly described in paragraph 1733, being a refined petroleum product or distillate", the "doctrine of use" was applied and the collector was instructed to assess duty under paragraph 5, *supra*, citation being made of *Magone v. Heller*, 150 U. S. 70, and *Roger & Gallet et al. v. United States*, 7 Ct. Cust. Appls. 89, T. D. 36424.

The concluding sentence of the said Treasury decision reads:

However, the assessment of duty under paragraph 5 will be at a higher rate than it is now the practice to assess, and it should be made effective only as to this mineral oil imported or withdrawn from customs custody after 30 days after this letter appears in the weekly TREASURY DECISIONS.

The importations here involved were entered more than 30 days after the publication of the Treasury decision, and were assessed according to its directions.

It may be said that the particular principle of the *Magone* and *Roger & Gallet* cases, *supra.*, which appellee invokes here, as expressed in a headnote of the latter case, is that "classification by *use* will prevail over an *eo nomine* designation if it appears that Congress so intended." The purport of the phrase, "if it appears that Congress so intended" should not be overlooked.

The principle has been often stated by this and other courts, in passing upon tariff laws, that the legislative intent is the lodestar of judicial decision, and the various rules of interpretation adopted by the courts are adopted for the purpose of arriving at such intent. *United States v. Guth Stern & Co.*, 21 C. C. P. A. (Customs) 246, T. D. 46777.

One of the most familiar of these rules is embraced in the doctrine of legislative adoption of administrative practice and judicial interpretation, one or both, and that rule, we think, is controlling in the case at bar.

We avail ourselves of the statement in appellant's brief relating to administrative practice and judicial interpretation, having ourselves examined the several references cited therein. The italics in the quoted matter are as used in the brief.

After quoting the language of pertinent paragraphs of the Tariff Acts of 1890, 1894, 1897, 1909, 1913, 1922 and 1930, respectively, the brief says:

Thus for about forty (40) years and in seven (7) successive tariff acts Congress provided for products of petroleum, both crude and *refined*, in the free list; and in each of the aforesaid tariff acts Congress likewise provided specifically for "medicinal preparations" in the dutiable list (Act of 1890—paragraphs 74 and 75; Act of 1894—paragraphs 58 and 59; Act of 1897—paragraphs 67 and 68; Act of 1909—paragraph 65; Act of 1913—paragraphs 5 and 16; Act of 1922— paragraphs 5 and 24; and Act of 1930—paragraphs 5 and 24).

Throughout this entire period the courts uniformly held that refined petroleum products, having medicinal properties, and identical with or similar to the merchandise involved herein, were free of duty under the provisions for petroleum products and were not dutiable under the provisions for "medicinal preparations."

Congress, with presumed knowledge of and in some instances demonstrated knowledge of these decisions, repeatedly reenacted the involved provisions in such language as to clearly indicate its approval of the courts' construction.

In G. A. 875, T. D. 11884, decided on September 19, 1891, during the life of the Act of 1890, the Board of General Appraisers (now the United States Customs Court) held that "Paraffinum molle" stated by the appraiser to be known under several names including "petrolatum" (one of the technical names of the merchandise here in question), the principal use of which was of a "medicinal character", was "paraffin in one of its forms; that it may be used medicinally" and that being paraffin it was more specifically provided for under the *eo nomine* provision for "paraffine" in paragraph 671, Tariff Act of 1890, than as a "medicinal preparation" under paragraph 75 of that act.

With presumed knowledge of this decision Congress in the next tariff act (1894) reenacted the *eo nomine* provision for "paraffine" in the free list (paragraph 578), and for the first time provided for "petroleum, crude or *refined:*" * * * in paragraph 568 of the free list.

In *Schoellkopf, Hartford & MacLagan, Ltd.* v. *United States*, 71 Fed. Rep. 694, the Circuit Court of Appeals, Second Circuit, under date of January 8, 1896, during the life of the Act of 1894, held that "Paraffinum Liq. Ph:G.," (also a technical name for the merchandise here in question), "a clear, oily liquid obtained from petroleum, ozokerite, or some similar mineral substance.", to be free of duty as "paraffine" under paragraph 671, Tariff Act of 1890, rather than dutiable as a distilled oil under paragraph 76 of that act.

In this case it was contended by the government that the word "paraffine" in the free list referred only to the hard or waxy paraffin. The court, on this point, said that paraffin was found in three forms—fluid, soft, and hard, and that—

The use by Congress of the single word "paraffine", without any qualification, manifests an intention to cover at least all varieties of the article which were known when the act was passed, and, as liquid paraffine was at that time one of the known forms of paraffine it comes within the provision of paragraph 671.

In G. A. 3565, T. D. 17345, the Board of General Appraisers (now the United States Customs Court) under date of June 23, 1896, during the life of the Act of 1894, held that liquid and soft paraffine imported under the Acts of 1890 and 1894 and invoiced as "Paraffine unguent, Paraffine molle, Paraffine Liq., Paraffine Ph. G. etc." was free of. duty as "paraffine" following the decision of the court in the *Schoellkopf* case, *supra.*

Again with presumed knowledge of these later decisions during the life of the Act of 1894, Congress, in the succeeding act (1897) reenacted the provision for "paraffin" in the free list (paragraph 633) and also reenacted the provision for "petroleum, crude or *refined*" (paragraph 626) in the identical language of the previous act. In this connection it will be noted that no material changes were made in the language of the "medicinal preparations" provisions.

In the Act of 1909 Congress again reenacted both free list provisions without change (paragraphs 639, 645) and likewise reenacted the provision for "medicinal preparations" (paragraph 65) without material change. During the life of the Act of 1909, the Secretary of the Treasury under date of Septmber 8, 1909, held, in T. D. 29991, that "paraffin liquid" fell within the commercial designation of "paraffin" and was therefore free of duty as "paraffin" under paragraph 645, Act of 1909, but that *"paraffin oil"* if *"more generally used as a medicinal preparation"* was *dutiable under paragraph 65 of the same act as medicinal preparations.* On September 27, 1909, *19 days after that decision,* the Secretary, in T. D. 30008, reversed his previous decision and held that *paraffin oil,* produced from petroleum and unmixed with any other ingredient, *was free* of duty *under paragraph 639* of the Act of 1909 *"regardless of* its invoiced description, *commercial designation, or the use to which it is to be put."* It is to be noted that in the latter decision the paraffin oil there involved is referred to as being produced under a "variety of names" including several of those which the witnesses in the instant case testified were applied to the imported oil here in question.

On April 10, 1911, during the life of the Act of 1909, this court in *Sonneborn Sons* v. *United States,* 1 Ct. Cust. Appls. 443, held that "paraffin oil" was "paraffin", but that although "paraffin" was provided for in paragraph 633 of the free list, Act of 1897, "paraffin oil" was nevertheless subject to the proviso to the free list provision for "petroleum, crude or refined" in paragraph 626.

During the Congressional hearings in the preparation of the bill (H. R. 3321) which later was enacted into law as the Tariff Act of October 3, 1913, the two above mentioned conflicting decisions of the Secretary of the Treasury (T. D. 29991 and T. D. 30008) were specifically called to the attention of the Ways and Means Committee in the Report on Tariff Bill of 1913—Ways and Means Committee—63d Congress—Appendix—Abstract of Treasury Decisions—on pages 722 and 723 as follows:

Paragraph 639. Refined petroleum.—Refined petroleum unmixed with any other ingredient, regardless of its invoice description, commercial designation or *use,* free of duty under paragraph 639 of the tariff act of 1909—T. D. 29991 of September 8, 1909, modified. Treasury Department, September 27, 1909. (T. D. 30008).

With this definite information of a Department decision on merchandise manifestly identical with the merchandise here in question, and with presumed knowledge of the decision of this court in the *Sonneborn* case, as well as with presumed knowledge of the previously mentioned decisions on similar merchandise under prior acts, Congress enacted paragraph 561 of the Act of 1913, providing for petroleum products, crude and refined, and for the first time provided therein for "paraffin oil" *eo nomine* and also for the first time included "paraffin" in the same paragraph.

Further, that it had been the unbroken administrative practice during the Acts of 1894, 1897 and 1909 to classify "paraffin oil", identical with and similar to the merchandise here involved, whether or not used as a "medicinal preparation", free of duty under the provisions for petroleum and petroleum products, crude and refined, was also brought to the attention of Congress in the above mentioned Report on Tariff Bill of 1913 on page 367 of the Appendix thereto wherein it is stated that "Mineral oil, refined—Paraffin oil; when unmixed with other ingredients" was passed free of duty (except where countervailing duties applied by virtue of the provisos), under the Wilson Act (1894), Dingley Act (1897) and the Act of 1909. In the instant case it is conceded, not only that the merchandise involved is "paraffin oil" as described in the United States Pharmacopoeia, but also that it is "a single unmixed and uncompounded product;" (R. 75).

It is manifest, therefore, that, when Congress, with known and presumed knowledge of the judicial history of the involved provision, and the unbroken administrative practice in conformity therewith, inserted "paraffin oil" and "paraffin" in the provision for petroleum products, crude and refined, in paragraph 561, it thereby sanctioned the repeated and consistent judicial interpretations, as well as the administrative practice, and gave a clear mandate that such practice should be continued.

*Frank & Co.* v. *United States*, 5 Ct. Cust. Appls. 273, 277, 279.

*United States* v. *Yuen*, 11 Ct. Cust. Appls. 479.

*United States* v. *Lamport Export Co.*, 15 Ct. Cust. Appls. 394, 401.

*United States* v. *Columbo Co.*, 21 C. C. P. A.; T. D. 46510.

*United States* v. *McGraw Wool Co.*, 19 C. C. P. A. 205, 208.

*James P. Smith & Co.* v. *United States*, 21 C. C. P. A. (Customs) 514; T. D. 46971.

*Cresca Co.* v. *United States*, 15 Ct. Cust. Appls. 105.

In compliance with this mandate paraffin oil was passed free of duty under paragraph 561, Act of 1913, throughout the life of that act (see stipulation marked Exhibit 1–R. 75). In the Act of 1922 Congress reenacted the provision in substantially the same language (paragraph 1633) and throughout the life of that act it was likewise passed free of duty (see stipulation marked Exhibit 1–R. 75). In reenacting this provision in paragraph 1733, Act of 1930, in the identical language of paragraph 1633, Act of 1922, it must again be presumed that Congress did so with full knowledge and approval, not only of the above mentioned decisions prior to the Act of 1913 and of the administrative practice in conformity therewith, but also with full knowledge and approval of the continued unbroken administrative practice during the following 17 years and through the tariff acts of 1913 and 1922.

In this connection it is to be noted that the practice was likewise continued under the present tariff act (1930—par. 1733) up to about March 1932, the effective date of the decision of the Treasury Department, reported in T. D. 45438 (see stipulation, R. 81), in which the Department instructed the classifying officers to change the practice and to classify these oils as "medicinal preparations."

In addition to the foregoing, we find, by examining other pertinent official documents, a statement in the Summary of Tariff Information, 1929 (prepared for the use of Congress in its preparation and consideration of the bill which became the Tariff Act of 1930) that, even were the foregoing history lacking, would be conclusive, in our opinion, as to the legislative intent relative to the classification of the merchandise here involved.

On page 2496 of volume 2 of the said summary there is quoted paragraph 1633 of the Tariff Act of 1922, which was precisely the same as paragraph 1733 of the Tariff Act of 1930, *supra*. Following its quotation, the summary gives extensive information relative to petroleum and petroleum products, together with statistics of imports and exports. The articles are discussed under the various headings of "Crude Petroleum," "Light Products of Distillation," "Illuminating Oils (Kerosene)," "Fuel Oils," "Lubricating Oils," "Greases," "Petrolatum," "Axle Greases," "Paraffin Wax," "Asphalt and Liquid Asphaltic Road Oils," "Residuum or Tar," and finally "*Other Mineral Oils.*" (Italics ours.)

Of the latter class, which is of particular interest here, the summary says:

Mineral oils other than those mentioned above have a variety of uses. Statistics of imports of *medicinal* oils \* \* \* follow: (Italics ours.)

| Calendar year | Rate of duty | Quantity | Value | Duty collected | Value per unit of quantity | Actual or computed ad valorem rate |
|---|---|---|---|---|---|---|
| Mineral oil, medicinal: | | *Pounds* | | | | |
| 1922 (Sept. 22–Dec. 31) | Free | 46, 499 | $6, 872 | | $0. 148 | |
| 1923 | ---do--- | 175, 693 | 33, 653 | | .192 | |
| 1924 | ---do--- | 162, 546 | 30, 746 | | .189 | |
| 1925 | ---do--- | 165, 205 | 17, 913 | | .108 | |
| 1926 | ---do--- | 860, 156 | 79, 044 | | .092 | |
| 1927 | ---do--- | 1, 411, 045 | 95, 586 | | .068 | |
| 1928 | ---do--- | 2, 416, 250 | 188, 008 | | .078 | |

With this information as to the administrative practice in the classification of medicinal mineral oils directly before it, the Congress retained as paragraph 1733 of the Tariff Act of 1930 the exact language of paragraph 1633 of the 1922 act, under which such classification had been made.

We deem this conclusive upon the question of legislative intent, and see no occasion for any discussion of other rules of interpretation, or of other doctrines, since there is no occasion for their application here.

The judgment of the United States Customs Court is *reversed*, and the cause *remanded* for further proceedings not inconsistent herewith.